28 F.3d 107
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Roy D. MORAGA, Plaintiff-Appellant,
v.
Dr. George KAISER, et al., Defendants-Appellees.
 No. 93-16911.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 24, 1994.*
Decided June 8, 1994.
 
 Before: HUG, D.W. NELSON, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Roy D. Moraga, a Nevada state prisoner, appeals pro se the district court's order granting defendants' motion for summary judgment in his 42 U.S.C. Sec. 1983 action. Moraga contends that defendants Dr. George Kaiser, Medical Director for the Nevada Department of Prisons; Dr. James Potter; Arthur Hardy, Senior Psychologist/Ely State Prison; and Ron Angelone, Director of the Nevada Department of Prisons violated his rights under the Eighth Amendment and Equal Protection Clause of the Fourteenth Amendment by failing to respond to his demand for knee surgery. We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm.
 
 
 3
 We review de novo the district court's grant of summary judgment. Hopkins v. Andaya, 958 F.2d 881, 884 (9th Cir.1992). A grant of summary judgment should be affirmed only if the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Taylor v. List, 880 F.2d 1040, 1044 (9th Cir.1989). To defeat a summary judgment motion, the nonmoving party must come forward with evidence sufficient to establish the existence of any elements that are essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Taylor, 880 F.2d at 1045. The party opposing summary judgment cannot rest on conclusory allegations but must set forth specific facts showing that there is a genuine issue for trial. Leer v. Murphy, 844 F.2d 628, 631 (9th Cir.1988). There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 
 4
 To establish liability under Sec. 1983, the plaintiff must demonstrate that defendants, acting under color of state law, deprived him of a right guaranteed under the Constitution or a federal statute. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir.1988). The plaintiff must demonstrate a causal connection between the named defendants and the alleged constitutional deprivation. Rizzo v. Goode, 423 U.S. 362, 375 (1976); Conner v. Sakai, 15 F.3d 1463, 1467 (9th Cir.1994); Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir.1988). Vague and conclusory allegations, however, are not sufficient to support a Sec. 1983 claim or to withstand summary judgment. Keniston v. Roberts, 717 F.2d 1295, 1300 (9th Cir.1983); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.1978), cert. denied, 442 U.S. 941 (1979).
 
 1. Deliberate medical indifference
 
 5
 The appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited deliberate indifference to serious medical needs. Hudson v. McMillian, 112 S.Ct. 995, 998 (1992); Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). Deliberate indifference may be manifested in two ways; either when prison officials deny, delay or intentionally interfere with medical treatment, or by the way that prison physicians provide medical care. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.1992). In either case, however, the indifference to medical needs must be substantial; inadequate treatment due to negligence, inadvertence, medical malpractice or differences in judgment between an inmate and medical personnel does not rise to the level of a constitutional violation. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980). A mere delay in providing a prisoner with medical treatment does not constitute an Eighth Amendment violation. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990).
 
 
 6
 (a) Dr. George Kaiser
 
 
 7
 Here, when Moraga entered the Nevada Department of Prisons in June 1990, he was diagnosed with osteochondritis dissecans in his left knee, which was a result of a previous work-related injury. Although Moraga had undergone arthroscopic knee surgery in April 1990, he still suffered from swelling and pain when he entered the prison, and was restricted from work camps because of this disability.
 
 
 8
 In March 1991, at the request of defendants, Dr. David Curtis of the William Bee Ririe hospital in Ely examined Moraga, his x-rays, and his arthoscopy operative report and diagnosed him with significant degenerative arthritis of the medial compartment of his left knee. Curtis recommended that Moraga's knee undergo an anterior cruciate ligament ("ACL") reconstruction. In November 1991, defendant Kaiser approved this surgical recommendation.
 
 
 9
 By April 1992, Moraga had not received any surgical treatment for his knee despite persistent complaints that his knee was "popping out" more frequently and that he was still suffering from pain and swelling in the area. In response to these complaints Kaiser referred Moraga to Dr. Curtis for a second evaluation. Curtis diagnosed Moraga with an anterior cruciate deficient left knee with a probable medial meniscal tear and found that the pain in Moraga's knee prevented him from continuing his physical therapy program. For the second time in 16 months, Curtis recommended reconstructive surgery of Moraga's knee.
 
 
 10
 In a July 1992 report to the state Attorney General's office, Kaiser confirmed that (a) Moraga was suffering from a deficiency of his anterior cruciate ligament in his left knee, (b) Dr. Curtis recommended reconstructive surgery on at least two separate occasions within a 16-month period; and (c) Kaiser himself recommended and approved of the reconstructive surgery. However, it was Kaiser's opinion that Moraga was a "poor surgical candidate" because he "had unrealistic expectations of surgery," exaggerated his medical complaints and possessed a history of failing to complete post-operative therapy. As a result, Kaiser concluded that "until such time as Mr. Moraga can understand the risks and benefits of the surgical procedure, and fully cooperate with a psychological profile evaluation, I do not feel surgery would be much more than worsen his current complaints and possibly alienate orthopedic consultants working with the Department and lead to little benefit to the patient or the Department."
 
 
 11
 Thus, although Kaiser acknowledged that surgery was warranted in Moraga's case, his decision to delay surgery until Moraga showed signs of cooperating with the medical staff did not, as a matter of law, demonstrate deliberate indifference to his medical needs. See Hudson, 112 S.Ct. at 998; McGuckin, 974 F.2d at 1060; Wood, 900 F.2d at 1335; Sanchez, 891 F.2d at 242; Broughton, 622 F.2d at 460.
 
 
 12
 (b) Dr. James Potter, Arthur Hardy, Ron Angelone
 
 
 13
 Moraga claims that prison physician Potter, senior prison psychologist Hardy and Prison Director Angelone violated his rights under the Eighth Amendment by being involved in the decision to deny his knee surgery. This contention lacks merit. Moraga fails to present any specific evidence to demonstrate a causal connection between the actions of any of these three defendants and the denial of his knee surgery. See Rizzo, 423 U.S. at 375; Conner, 15 F.3d at 1467; Leer, 844 F.2d at 633-34. Thus, Moraga's Eighth Amendment claim against defendants Potter, Hardy and Angelone is deficient. See Hudson, 112 S.Ct. at 998; McGuckin, 974 F.2d at 1060; Wood, 900 F.2d at 1335; Sanchez, 891 F.2d at 242; Broughton, 622 F.2d at 460.
 
 
 14
 Therefore, because a reasonable jury would not be able to return a verdict that defendants Kaiser, Potter, Hardy and Angelone violated Moraga's Eighth Amendment rights, the district court did not err by granting summary judgment for defendants on this claim. See Fed.R.Civ.P. 56(c); Celotex, 477 U.S. at 322; Anderson, 477 U.S. 242, 248 (1986); Matsushita, 475 U.S. at 587; Taylor, 880 F.2d at 1044; Karim-Panahi, 839 F.2d at 624.
 
 2. Violation of the Equal Protection Clause
 
 15
 Conclusory allegations by themselves do not establish an equal protection violation without proof of invidious discriminatory intent. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265 (1977).
 
 
 16
 Here, Moraga fails to raise a genuine issue of material fact establishing that defendants treated him differently from other inmates with regard to medical treatment, or that their actions were motivated by intentions to discriminate against him. Thus, his Fourteenth Amendment Equal Protection claim is deficient. See Village of Arlington Heights, 429 U.S. at 265; Keniston, 717 F.2d at 1300; Mosher, 598 F.2d at 441. Accordingly, the district court did not err by granting summary judgment for the defendants in Moraga's Equal Protection claim. See Fed.R.Civ.P. 56(c); Taylor, 880 F.2d at 1044.
 
 
 17
 We therefore AFFIRM the district court's dismissal of Moraga's Sec. 1983 action.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, plaintiff's request for oral argument is denied
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3